ORIGINAL FILED

OCT 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMDEN COUNTY COUNCIL<br>  ON ECONOMIC OPPORTUNITY,<br>538 Broadway<br>Camden, NJ 08103<br><br>           Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF<br>  HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>       and<br><br>MICHAEL LEAVITT, Secretary,<br>  U.S. Department of Health and<br>  Human Services,<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>           Defendants. | Case No.<br><br>Case: 1:07-cv-01835<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 10/11/2007<br>Description: Admn. Agency Review |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Camden County Council on Economic Opportunity ("CCC") hereby files this Complaint against defendants United States Department of Health and Human Services ("HHS") and Michael Leavitt in his official capacity as Secretary of HHS (collectively, "HHS" or "Agency"), and alleges as follows:

### JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1361. Venue is proper under 28 U.S.C. § 1391(e). The declaratory and injunctive relief sought in this action is authorized by 28 U.S.C. §§ 2201-2202. Judicial review of ACF's actions is authorized under 5 U.S.C. §§ 701 *et seq.*

## PARTIES

2.  CCC is a not-for-profit corporation established under the laws of the State of New Jersey and exempt from federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code of 1986. CCC was founded in 1965 as the Community Action Program in the City of Camden. It evolved into the Camden County Council on Economic Opportunity, which was incorporated on September 13, 1966 to carry out the "Great Society" programs of the Johnson Administration. As the largest private social service organization in Camden, CCC operates a broad array of programs in furtherance of its charitable purposes, including Head Start, child care assistance, housing and community development, senior and youth programs, and health services. Since 1968, CCC has been the Head Start grantee for the greater Camden, New Jersey area. CCC's Head Start programs serve about 1,300 children through twenty-three sites.

3.  Defendant HHS is statutorily charged with implementation of the federal Head Start and Early Head Start programs authorized under 42 U.S.C. §§ 9831-9852 ("Head Start Act"). Within HHS, the Administration for Children and Families ("ACF") administers and oversees the Head Start/Early Head Start program.

4.  Defendant Michael Leavitt is the Secretary of HHS and is therefore the official within the Executive Branch of the United States government ultimately responsible for carrying out the programs and activities of that Department. He is sued in his official capacity.

## LEGAL FRAMEWORK

5.  This case arises out of a review of CCC's Head Start program by or under the supervision of ACF. The Head Start Act (at § 9836A(c)) requires such a review every three years.

6.  The Act further provides (at § 9836A(d)) that:

>       If the Secretary determines, on the basis of [such] a review that a Head Start agency designated pursuant to section 641 fails to meet the standards described in subsection (a) or results-based performance measures developed by the Secretary under subsection (b), the Secretary shall –
>       (A) inform the agency of the deficiencies that shall be corrected;
>       (B) with respect to each identified deficiency, require the agency --
>               (i) to correct the deficiency immediately, if the Secretary finds that the deficiency threatens the health or safety of staff or program participants or poses a threat to the integrity of federal funds;
>               (ii) to correct the deficiency not later than 90 days after the identification of the deficiency if the Secretary finds, in the discretion of the Secretary, that such a 90-day period is reasonable, in light of the nature and magnitude of the deficiency; or
>               (iii) in the discretion of the Secretary (taking into consideration the seriousness of the deficiency and the time reasonably required to correct the deficiency), to comply with the requirements of paragraph (2) concerning a quality improvement plan; and
>       (C) initiate proceedings to terminate the designation of the agency unless the agency corrects the deficiency.

42 U.S.C. § 9836A(d)(1).

7.      HHS/ACF's regulations (at 42 C.F.R. § 1304.60) implement the statutory authority conferred under § 9836A(d)(1) in the following manner:

>       (b)  If the responsible HHS official, as a result of information obtained from a review of an Early Head Start or a Head Start grantee, determines that the grantee has one or more deficiencies, as defined in Sec. 1304.3(a)(6) of this part, he or she will notify the grantee promptly, in writing, of the finding, identifying the deficiencies to be corrected and, with respect to each identified deficiency, will inform the grantee that it must correct the deficiency either immediately or pursuant to a Quality Improvement Plan.
>
>       (c)  An Early Head Start or Head Start grantee with one or more deficiencies to be corrected under a Quality Improvement Plan must submit to the responsible HHS official a Quality Improvement Plan specifying, for each identified deficiency, the actions that the grantee will take to correct the deficiency and the timeframe within which it

will be corrected. In no case can the timeframes proposed in the Quality Improvement Plan exceed one year from the date that the grantee received official notification of the deficiencies to be corrected.

(d) Within 30 days of the receipt of the Quality Improvement Plan, the responsible HHS official will notify the Early Head Start or Head Start grantee, in writing, of the Plan's approval or specify the reasons why the Plan is disapproved.

(e) If the Quality Improvement Plan is disapproved, the Early Head Start or Head Start grantee must submit a revised Quality Improvement Plan, making the changes necessary to address the reasons that the initial Plan was disapproved.

8. As further explained below, the aforementioned review of CCC led to a determination under § 9836A(d)(1) that deficiencies existed and required correcting, and to a subsequent determination that not all such deficiencies were properly corrected. Based on this, a decision was made to terminate CCC's Head Start grant. CCC appealed that determination. In such a circumstance, a grantee is entitled to an administrative appeal under § 9841 of the Head Start Act. CCC filed such an appeal and lost. It now appeals the termination of its grant to this Court.

## THE FACTS

### Initial Review

9. CCC was reviewed during the period September 11, 2005 to September 16, 2005. The review employed the Program Review Instrument for Systems Monitoring ("PRISM") guide. The review was conducted on-site at CCC.

10. Nearly four months after the review, on January 27, 2006, CCC received a determination ("Initial Determination") in the form of a letter signed by Mary Ann Higgins, Regional Administrator (for federal Region II) of Head Start. The Initial Determination notified CCC of twelve "deficiencies" in its Head Start operations. CCC was directed to correct three of

4

these deficiencies "immediately" (the letter specified thirty days) and to correct the remainder within ninety days.

11. Attached to the Determination was the Head Start Review Report, describing the alleged deficiencies and correlating them to program areas. The Initial Determination listed the areas in which CCC was alleged to have deficiencies and added "Core Questions" and regulatory references. It made no independent findings -- indeed it made no findings whatsoever. The only evidence of actual decision-making by Ms. Higgins (or any other official) in the Initial Determination is its "Time Frame for Compliance" and accompanying brief statements relating those time periods either to 42 U.S.C. §§ 9836A(d)(1)(B)(i) ("immediate", *i.e.*, 30 days) or § 9836A(d)(1)(B)(ii) (90 days). Stated differently, no reasoning was presented in the Determination for how or why any deficiency was determined to exist (other than the attached Report) or how or why the deficiency was determined to be "immediate," or in the 90 day category. (The attached Report was silent as to which category of correction applied to any of the deficiencies.)

## FOLLOW-UP

### Reviews

12. On March 20, 2006, reviewers came to CCC to conduct a follow-up review. Because the new review took place 34 days after CCC received the aforementioned Determination, it was (and is) presumed that the review was concerned only with deficiencies that the Determination stated were to be corrected within thirty days.

13. A later follow-up review took place between May 14 and May 19, 2006.

### Termination of Grant

14. On April 10, 2007, CCC received another determination (by letter). This one conveyed the decision by Channell Wilkins, Director of the Office of Head Start, to terminate

CCC's Head Start grant -- on the grounds that four of the original twelve deficiencies remained uncorrected. Other than an overview of findings and a second Head Start Review Report covering both follow-up visits, the termination notice provided no information as to how or why the responsible HHS official (who signed the notice) decided to terminate CCC's grant.

15. The four remaining deficiencies included one in the "immediate" category (the other two were found to have been corrected) and three in the 90 day category.

16. Regarding the remaining immediate deficiency, the reviewers reported that the problems at the sites (playgrounds) that had been originally reported and on which the Initial Determination was based were fully corrected. Notwithstanding this, they concluded that there was a failure of CCC to correct because they observed, at a completely different playground (at another location) "leaves and trash inside the playground fence and alongside the walkway used by the children to access the playground." Follow-up Review Report at 11. They also found "two grills, metal poles used for erecting a tent, drink cans, beer caps, a tank with a wooden beam attached, and a tree from next door that had fallen on the fence." *Id.* The reviewers also noted that "the grantee began making corrections while the review team was on site." *Id.* at 12. They returned to the site the following day, on March 23, 2006, finding that improvements had been made since the prior day's visit. However, the reviewers then noted that there remained unfinished items: "fill holes where tent poles had been extracted from the ground, removal of cement pieces in upper left hand corner of playground, removal of tree branch leaning on fence in lower left corner, and removal of other debris." *Id.*

17. The first and only notice CCC received on the follow-up reviews was *via* the April 10 termination. Before then, except for comments of the reviewers on-site, no HHS official, or agent, made any findings or determinations as to the deficiencies the reviewers considered to have been not corrected (or corrected).

6

18. The April 10 termination determination is bereft of any reasoning or finding or any other evidence of independent decision-making (beyond the attached report). Why and how, for example, the official issuing the termination concluded that a new problem at another playground constituted a failure to correct previously-described situations (by the first report) that had nothing to do with the newly-discovered problems at the different playground was not stated or otherwise indicated. The determination is likewise bereft of any statement or indication that the determination was discussed with or approved by any other HHS official (or anyone else).

## **TERMINATION**

19. Three separate regulatory provisions govern determinations to terminate Head Start grants -- 45 C.F.R. § 1304.60(f), 45 C.F.R. § 1303.14(a) and 45 C.F.R. § 74.90(a). They provide as follows:

> (f) If an Early Head Start or Head Start grantee fails to correct a deficiency, either immediately, or within the timeframe specified in the approved Quality Improvement Plan, the responsible HHS official will issue a letter of termination or denial of refunding. Head Start grantees may appeal terminations and denials of refunding under 45 C.F.R. part 1303, while Early Head Start grantees may appeal terminations and denials of refunding only under 45 C.F.R. part 74 or part 92. A deficiency that is not timely corrected shall be a material failure of a grantee to comply with the terms and conditions of an award within the meaning of 45 C.F.R. § 74.61(a)(1), 45 C.F.R. § 74.62 and 45 C.F.R. § 92.43(a).

45 C.F.R. § 1304.60(f).

> (a) After receiving concurrence from the Commissioner, ACYF, the responsible HHS official may terminate financial assistance to a grantee. Financial assistance may be terminated in whole or in part.

45 C.F.R. § 1303.14(a).

> (a) HHS attempts to promptly issue final decisions in disputes and in other matters affecting the interests of recipients. However, final decisions adverse to the recipient are not issued until it is

7

>clear that the matter cannot be resolved through further exchange of information and views.

45 C.F.R. § 74.90(a).

20. Of the three, 45 C.F.R. § 74.90 takes precedence. Under 45 C.F.R. § 74.3, Part 74 "supersedes all administrative requirements of codified program regulations, program manuals [*etc.*] which are inconsistent with the requirements of [Part 74]..." The only exceptions are if the otherwise superseded material is "*required* by Federal statute, or authorized in accordance with the deviations provisions in § 74.4." No such deviation exists with respect to § 74.90's supersession of Head Start regulations.

## APPEAL BY CCC

21. On May 11, 2007, CCC filed a Written Appeal and Request for Hearing, including a Motion to Dismiss and a Request for Documents in accordance with 45 C.F.R. §§ 16.8 and 1303.14. CCC also submitted its appeal file, consisting of all the documents in its possession it considered relevant to the termination decision and Board's hearing thereon (*Id.*) and sought further discovery.

22. ACF filed a Brief in Opposition to the Appellant's Motion to Dismiss. In accordance with the regulations at 45 C.F.R. § 16.8, ACF also filed a supplement to the appeal file containing any additional documents supporting the termination decision.

23. After receipt of the requested documents and further review of the appeal file, on July 7, 2007, CCC filed a Revised Written Appeal and Request for Hearing. In short, CCC's arguments divided the deficiencies on which the termination is based into two parts -- those for which CCC was given 90 days to fix and the one that fell into the "immediate" category. Regarding the 90 day category, CCC argued that the decision to impose a 90 day timeframe was procedurally deficient because, among other things, it was in excess of the authority provided in Head Start regulations and without the statutory precondition of a finding (essentially that the 90

days allowed is sufficient time for correction). As to the one remaining "immediate" deficiency, CCC's arguments were based on the fact that it was specific conditions at two playgrounds (as presented in the first report) that led to the "immediate" determination and that those conditions, according to the follow-up reviews, had been corrected.

24. After further argument by the parties, on September 25, 2007, the Departmental Appeals Board ("DAB") issued its decision denying CCC's motion to dismiss and granting ACF's motion for entry of summary judgment, and affirming ACF's decision to terminate CCC's Heat Start grant. The decision was issued without a hearing, although CCC had requested one.

25. It is this decision and the bases therefor that CCC in this action contends are unlawful and arbitrary and capricious.

## LEGAL VIOLATIONS

26. Based on the foregoing, the decisions regarding CCC's deficiencies as well as the process employed in making those decisions are unlawful and arbitrary and capricious. The violations of law that have resulted include, but are not limited to, those described in the succeeding paragraphs.

27. The termination decision violates the requirements of 45 C.F.R. §§ 74.90 and § 1303.14(a) because it was made without any finding or determination that the problems that remained could not "be resolved through further exchange of information and views" and also was made without the concurrence of the ACF Commissioner.

28. Insofar as the termination decision was based on CCC's failure to correct the 90 day deficiencies, it is in excess of ACF's termination authority under 45 C.F.R. Part 1304, Subpart E. The 90 day deficiency authorization in the Head Start Act was never lawfully activated by amending existing regulatory authority. Specifically, the current regulatory section

requires that for a deficiency that is not "immediate," the official must "inform the grantee that it must correct the deficiency... *pursuant to a Quality Improvement Plan* (emphasis added). Such plans are jointly developed by the grantee and ACF. Had there been a Quality Improvement Plan for the other than immediate deficiencies, a failure of CCC to meet timetables (except for a truly exceptional and uncontrollable event) would have met the standards required by 45 C.F.R. § 74.90.

29.   In ignoring the limitations Head Start regulations impose on the foregoing methods to correct deficiencies, the DAB exceeded its regulatory authority. Under 45 C.F.R. § 16, "[t]he Board shall be bound by *all* applicable laws and regulations." (Emphasis added).

30.   Assuming *arguendo* that ACF may utilize the statutory authorization of a ninety-day correction period, the necessary finding "that such a ninety-day period is reasonable, in light of the nature and magnitude of the deficiency" 42 U.S.C. § 9836A(d)(1)(b)(ii)) was not made. As such, the correction period's imposition was unlawful. Furthermore, the DAB's assumption of such a finding when none existed in the record was arbitrary and capricious.

31.   The Initial Determination, dated January 27, 2006, cited CCC for being deficient with Performance Standard 1304.53(a)(10)(viii) because the playground areas at two sites did not appear to be cleaned on a daily basis. Yet, in the April 9, 2007 Review Report, the reviewers noted that "[t]he concerns raised in the 2005 Head Start Review Report regarding the Charleston Center and the Hayes Center had been resolved."

32.   ACF's argument before the DAB that this deficiency had not been corrected because another site, Lois I, revealed leaves and trash inside the playground fence, among other conditions, was an unlawful *post hoc* rationalization of the decision to terminate, which was silent as to why a new problem at another site qualified as a continuing deficiency. In any event,

the DAB's determination of the continuing immediate deficiency was arbitrary and capricious and inconsistent with the Head Start Act and relevant regulations.

33. Furthermore, as to the continuing immediate deficiency, ACF failed to provide CCC with adequate notice. No authorized official made the perquisite (regulatory) finding of a deficiency, or that the deficiency was in need of immediate correction. The original determination of an immediate deficiency was insufficient to alert CCC that any subsequent problem at any playground would be considered to be a failure to correct the immediate deficiency.

34. Finally, if the newly found problems at another playground constituted a deficiency, CCC was deprived of its opportunity to correct the deficiency, contrary to the provisions of 42 U.S.C. § 9836A(d)(1)(B) and regulations issues thereunder.

**PRAYER FOR RELIEF**

35. **NOW, THEREFORE**, CCC requests that this Court:

    A. Declare that ACF's bases for terminating CCC's Head Start grant are unlawful and arbitrary and capricious.

    B. Declare that the DAB's decision to uphold the termination is itself unlawful and arbitrary and capricious.

    C. Direct ACF/HHS to reinstate CCC's Head Start grant 02CH0799 and to make all remaining funds in that grant available to CCC to expend on allowable grant-related costs.

    D. Award CCC its costs and attorneys fees incurred in the prosecution of this action.

    E. Grant such other relief as the Court deems warranted and just.

Respectfully submitted,

_____
James L. Feldesman (DC Bar No. 023796)
Edward T. Waters (DC Bar No. 422461)
Robert A. Graham (DC Bar No. 450345)
FELDESMAN TUCKER LEIFER FIDELL LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)
jfeldesman@ftlf.com
ewaters@ftlf.com
rgraham@ftlf.com

12

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Camden County Council on Economic Opportunity

## DEFENDANTS
United States Department of Health and Human Services; and Michael Leavitt, Secretary, United States Department of Health and Human Services

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036

Case: 1:07-cv-01835
Assigned To : Lamberth, Royce C.
Assign. Date : 10/11/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ⊙ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⊙ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 U.S.C. Sec. 706. The U.S. Dept. of Health and Human Services acted contrary to law in terminating Camden Community Council's Head Start grant.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 10-11-07   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.