IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAMDEN COUNTY COUNCIL ON ECONOMIC OPPORTUNITY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 07-1835 (RCL) |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, | ) ) ) | |
| and | ) ) | |
| MICHAEL LEVITT, Secretary, United States Department of Health & Human Services, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants, the United States Department of Health and Human Services ("HHS") and Michael Levitt, through counsel, hereby submit their combined reply in further support of their motion for summary judgment and response in opposition to plaintiff's motion for summary judgment.

Review of plaintiff's opposition readily reveals that summary judgment is warranted in defendants' favor. Plaintiff fails to oppose many of defendants' substantive arguments, thereby implicitly conceding their validity. Furthermore, even by plaintiff's own account, it is apparent that it was a grantee with deficiencies, thus warranting the Court upholding the decision to terminate plaintiff, Camden County Council on Economic Opportunity's ("CCC"), Head Start

funding.  Because the material facts are undisputed,[1] summary judgment in defendants' favor

should be granted and plaintiff's motion for summary judgment should be denied.[2]

## **ARGUMENT**

**I.          SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR
          BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT CCC
          WAS A GRANTEE WITH DEFICIENCIES.**

In their motion for summary judgment, defendants demonstrated that plaintiff was

operating under the Head Start program in a deficient manner, thereby warranting the termination

of plaintiff's funding.  See Defendants' Memorandum in Support of Their Motion for Summary

Judgment ("Defs.' Mem.") at 20-27.  In response, while plaintiff attempts to refute several of the

Board's findings, plaintiff itself cannot refute that it remained a grantee with deficiencies at the

time of the March and May 2006 follow-up reviews.  This alone supports a conclusion that the

---

[1]Plaintiff has failed to properly oppose defendants' statement of material facts not in genuine dispute.  Local Civil Rule 56.1 requires that an opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . ."  See also LCvR 7.1(h).  Here, plaintiff has merely submitted its own separate "Counterstatement of Material Facts" without specifically addressing the facts set forth in defendants' Statement of Material Facts as to Which There is No Genuine Dispute.  This failure to properly oppose defendants' statement of facts warrants the Court treating such facts as conceded.

[2]Oddly, while CCC has filed its own motion for summary judgment, CCC seems to suggest that there are material facts in dispute and that a trial in this matter might be required.  See, e.g., Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Pl.'s Mem.") at 23 ("Further, witness testimony and the documentary evidence will show that CCC has a policy and process to obtain Policy Council for all new hires, and that there is no requirement to maintain that documentation for individual employment records.").  However, as defendants have demonstrated, there are no material facts in dispute concerning the conclusion that plaintiff remained a grantee with deficiencies, which warranted the termination of its funding.

decision to terminate plaintiff's funding was warranted and summary judgment in defendants' favor should be awarded.  See 45 C.F.R. § 1303.14(b)(4) (authorizing termination of funding for failure to correct "one or more deficiencies.").

   **A.   CC Cannot Refute the Board's Finding that it Failed to Ensure Children Were Up-to-Date on Health Care.**

   First, CCC remained in non-compliance with 45 C.F.R. section 1304.20(a)(1)(ii)(A), which required that CCC, within 90 calendar days of a child's entry into the Head Start program, obtain a determination from a health care professional that the child is up-to-date on a schedule of "age appropriate preventive and primary health care . . . ."  Id.  Furthermore, if a child is found not to be up-to-date on such health care, CCC had the responsibility to "assist parents in making the necessary arrangements to bring the child up-to-date."  Id.  The Board found that there was at least one child's file that demonstrated that a lead test had not been obtained, despite the fact that the child's health assessment was dated *five months* after the corrective action period.  A.R. at 27. CCC does not dispute this fact.  See Plaintiff's Counterstatement of Material Facts ("Pl.'s Facts") ¶ 18 ("The records of the children that CCC was able to locate revealed that four were screened for lead risk and the parents of one refused to submit to screening but CCC documented follow-up actions.").  Nor does CCC contest the Board's finding that there were missing dental records for two children.  See id. ¶ 19 ("Of the two children lacking dental examinations, the parents of both either failed to submit requested documentation or failed to make/attend a dental appointment.").[3]  Thus, by CCC's own admission, it was a grantee with deficiencies under 45

_____

   [3]CCC contends that it took "follow-up steps as required" and "ACF did not account for CCC's efforts to assist non-compliant parents with obtaining dental examinations consistent with 45 C.F.R. §§ 1304.20(a) and 1304.51(c)."  Pl.'s Facts ¶ 19; Pl.'s Mem. at 20-21.  CCC does not provide any support for the proposition that its follow-up efforts excused its failure to obtain the

C.F.R. section 1304.20(a)(1)(ii)(A), and  ACF properly decided to terminate its funding.  See Philadelphia Housing Auth. v. Leavitt, No. Civ. A. 05-2390, 2006 WL 299039, at *2 (E.D. Pa. Oct. 17, 2006) (granting summary judgment in favor of and upholding DAB's decision affirming ACF's termination of Head Start funding where there was not any material dispute that the plaintiff failed to meet the Head Start enrollment requirements).

> **B.     CCC Has Failed to Refute the Board's Finding that CCC Failed to Perform the Requisite Screenings.**

Second, CCC does not dispute that it remained deficient in its compliance with 45 C.F.R. section 1304.20(b)(1), which required CCC, within 45 days of a child's entry into the program, to "perform or obtain linguistically and age appropriate screening procedures to identify concerns regarding a child's developmental, sensory (visual and auditory), behavioral, motor language, social, cognitive, perceptual, and emotional skills."  Id.

The DAB found that CCC failed to rebut the fact that the files of four children did not contain adequate documentation regarding the required screenings.  A.R. at 32.  Specifically, the Board found that nine of twelve children did not have any vision screenings.  Id. at 35.  CCC, in response, does not refute this fact.  Rather, CCC contends that "the records of the children that CCC was able to [identify] revealed that *a number* have documentation of completed vision screening."  Pl.'s Mem. at 21; Pl.'s Facts ¶ 20.  This vague allegation does nothing to refute the Board's conclusion that in fact the requisite vision screenings were not adequately documented in the children's files.  See Philadelphia Housing Auth., 2006 WL 299039, at *2 (granting summary

---

necessary documentation or that it took *active* steps to assist parents in obtaining the requisite examinations, as opposed to merely sending parents a notice indicating that the requisite documentation was missing.  See, e.g., A.R. at 747, 776.

judgment in favor of and upholding DAB's decision affirming ACF's termination of Head Start funding where there was not any material dispute that the plaintiff failed to meet the Head Start enrollment requirements).

CCC has also failed to refute the fact that there were children missing the requisite hearing screenings. Compare A.R. at 35 with Pl.'s Mem. at 21 ("Similarly, of the ten children's files listed as lacking hearing screening, *a number have documentation of completed hearing screenings* or show that the provider was unable to complete the exam."). As plaintiff is aware, on a motion for summary judgment, plaintiff, as the non-movant, is not at liberty to rest upon mere allegations or denials, but must come forward with evidence establishing a material issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, plaintiff's vague statement that "a number" of children have documentation is insufficient to withstand summary judgment, notably where one deficiency alone is sufficient to affirm the decision to terminate plaintiff's funding. 45 C.F.R. § 1303.14(b)(4). And, as it concerns developmental screenings, CCC contends that "[o]f the three children listed as lacking developmental screening, one could not be identified . . . and the remaining two have records of completed developmental screens." Pl.'s Mem. at 22.[4] Again, even assuming that CCC has shown that two files in fact contained documentation regarding developmental screening, this allegation falls short of refuting the

_____

[4]In several instances CCC contends that it could not identify certain children's files because "ACF listed that child only by initials, and there are multiple CCC children with those same initials." Pl.'s Mem. at 20, 21, 22. Interestingly, however, CCC does not indicate *how many* children's files had the same initials; nor does CCC contend that review of all of the children's files containing the same initials revealed that they were all in fact in compliance. Therefore, this vague allegation fails to adequately refute defendants' argument that these files remained deficient. Anderson, 477 U.S. at 249-50 (If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted.").

Board's finding, thereby warranting a finding that CCC remained a grantee with deficiencies.

##### C. CCC Has Conceded That Its Record-Keeping was Deficient.

Finally, CCC's own arguments reveal that it continued to be in non-compliance with 45 C.F.R. section 51(g), which required CCC to "establish and maintain efficient and effective record-keeping systems to provide accurate and timely information regarding children, families and staff."

First, concerning nutritional assessments, CCC does not refute ACF's finding that there were children missing the requisite assessments. Rather, CCC again contends that it could not identify two of the files. See supra at 6 & n.4. However, regarding those files that it could identify, CCC contends that "*the majority* contain documentation of completed nutritional assessments." Again, this half-hearted allegation falls far short of refuting defendants' contention that CCC remained a grantee with deficiency. Anderson, 477 U.S. at 249-50 (If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted.").

CCC also does not refute the fact that it failed to maintain proper documentation regarding its staff. The Board found that CCC failed to show that it had records pertaining to background checks for three employees prior to the end of the corrective action period. A.R. at 42. In attempting to refute this contention, CCC contends that it did "in fact, substantially comply with Head Start record-keeping requirements." Pl.'s Mem. at 23. CCC fails to submit any support for the proposition that *substantial compliance* is sufficient to withstand the termination of its Head Start funding. And, notably, CCC does not refute the Board's finding that *three* employee files revealed there were no background checks as required. A.R. at 42.

6

Rather, CCC mystically contends that "[t]he *two* personnel files that contained no documentation of criminal background checks were both for employees terminated by CCC." Pl.'s Mem. at 24. Again, even accepting CCC's allegation as true, it remains apparent that there was at least *one* employee file that was non-compliant, thus warranting the conclusion that CCC remained a grantee with deficiencies. See 45 C.F.R. § 1303.14(b)(4) (authorizing termination of funding for failure to correct "one or more deficiencies.").

CCC attempts to refute several other of the Board's findings concerning CCC's deficiencies related to its staff's files. First, at length discussion of these arguments is not required because, as noted above, CCC has conceded that it remained deficient in several areas, and therefore there is a sufficient basis upon which this Court can affirm the Board's decision terminating CCC's Head Start funding. 45 C.F.R. § 1303.14(b)(4) (authorizing termination of funding for failure to correct "one or more deficiencies."). Second, none of these remaining allegations refute the finding that CCC was deficient in maintaining its staff's records.

CCC contends that only one employee file, not ten, lacked the requisite Policy Council Approval. Pl.'s Mem. at 23. However, CCC does not contend that the one file it identifies in fact had the documentation as of the time of its review. See id. ("[T]his amounts to what is, at best, an inconsequential non-compliance with CCC's record-keeping obligations."). The same is true regarding CCC's failure to maintain appropriate position descriptions in each employee's files; while CCC contends that there was only one such file lacking the requisite documentation, and not six, it again does not refute that again there was information that was not contained in at least one file. Finally, CCC contends that only *three* employees were missing the requisite documentation of CPR/First Aid Training. While CCC contends that New Jersey only requires

that one staff member with CPR and First Aid training be in the center when children are present,

Pl.'s Mem. at 24, CCC does not explain how New Jersey law trumps the requirements of the

*federal* Head Start program, the requirements of which CCC was required to comply with if it

wanted to retain its *federal* Head Start funding.  For these reasons, CCC's arguments are simply

insufficient to withstand defendants' motion for summary judgment.  Anderson, 477 U.S. at 249-

50 (If the evidence favoring the non-moving party is "merely colorable, or is not significantly

probative, summary judgment may be granted.").  See also Philadelphia Housing Auth., 2006

WL 299039, at *2 (granting summary judgment in favor of and upholding DAB's decision

affirming ACF's termination of Head Start funding where there was not any material dispute that

the plaintiff failed to meet the Head Start enrollment requirements).

### D.     CCC Failed To Properly Maintain Its Outdoor Facilities.[5]

Finally, CCC does not dispute the fact that the conditions at one of its facilities was

hazardous.  Pursuant to 45 C.F.R. section 1304.53(a)(10)(viii), CCC was required to "conduct a

safety inspection, at least annually, to ensure that *each* facility's space, light, ventilation, heat and

other physical arrangements are consistent with the health, safety, and developmental needs of

children."  (Emphasis added).  As early as September 2005, CCC was put on notice that *at least*

two of its sites' outdoor areas were not secured or cleaned to prevent children from being injured.

A.R. at 236.  CCC had been given thirty days to correct these deficiencies.  Id. at 227.  Yet, on

March 22, 2006, this condition remained as it concerned the Lois I Center.  Specifically, a

follow-up review at that time revealed that there was trash, leaves, two grills – including one

---

[5]Defendants will address plaintiff's argument that it was not provided with proper notice regarding the conditions at the Lois I Center, infra at 13-16.

with an attached gas tank – metal poles, cans, and more that continued to endanger children. A.R. at 201-02.  A revisit to the Lois I Center on March 23, 2006 revealed that while some improvements were made, there remained deficiencies.  Id. at 202.

CCC's argument that *some* improvements were made does not refute the Board's finding that there remained deficiencies.  Pl.'s Mem. at 24.  Notably, as mentioned supra at 2 & n.1, nowhere does CCC specifically refute defendants' assertion that there remained deficiencies at the Lois I Center.  See Defendant's Statement of Material Facts Not in Genuine Dispute ("Defs' Facts") ¶ 46.  Thus, CCC's assertion that "CCC had taken appropriate measures *to attempt correction* of facilities [sic] problems at the Lois I site, and in fact, terminated the lease in May 2006[,]" almost two months *after* the follow-up review was conducted, is simply insufficient to withstand summary judgment.  Anderson, 477 U.S. at 249-50 (If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted.").  See also Philadelphia Housing Auth., 2006 WL 299039, at *2 (granting summary judgment in favor of and upholding DAB's decision affirming ACF's termination of Head Start funding where there was not any material dispute that the plaintiff failed to meet the Head Start enrollment requirements).

## II.    THERE WERE NO PROCEDURAL IRREGULARITIES THAT WARRANT THE DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Perhaps realizing that it was in fact operating its Head Start program in a deficient manner, CCC has asserted several arguments that it believes supports a finding that the decision to terminate its funding was procedurally infirm.  However, none of these arguments warrant a finding that the Board's decision should not be upheld.

**A.     The Head Start Act Authorizes ACF To Require Deficiencies to Be Corrected Within 90 Days.**

CCC first contends that ACF was without authority to require CCC to correct certain deficiencies within 90 days. According to CCC, ACF, according to its regulations, only had the authority to require correction immediately or in accordance with a Quality Improvement Plan ("QIP."). Pl.'s Mem. at 10 (citing 45 C.F.R. § 1304.60(b)).[6] This argument is without merit for several reasons.

First, as noted by the Board, CCC never raised this argument at the time that it was informed of the timeframe in which to correct its deficiencies. Rather, CCC received ACF's notice requiring that certain deficiencies be corrected within 90-days, never disputing that the 90-day period was insufficient. If in fact CCC believed that ACF was without the authority to utilize a 90-day correction period, CCC could have raised this argument at the time it was given ACF's notice of deficiencies.

Second, there is simply no merit to CCC's contention that ACF is constrained by regulations that are more restrictive in nature than the governing statute. The parties agree that the applicable statutory provision provides the Secretary with authority to require such corrections within 90 days. 42 U.S.C. § 9836a(d)(1)(B). CCC's only argument is that ACF's regulations, which were adopted prior to the amendment of the statute, which previously did not afford ACF the option of imposing a 90-day deadline, continue to be binding. See 45 C.F.R. § 1304.60(b). Reference to the two applicable provisions – 42 U.S.C. 9836a(d)(1)(B) and 45

---

[6]Ironically, CCC contends in other portions of its brief that it simply did not have sufficient time to correct all of the deficiencies identified by ACF. Pl.'s Mem. at 15 & n.4. Therefore, by not requiring that such deficiencies be corrected "immediately" as was its prerogative, ACF afforded CCC more time to correct its deficiencies.

C.F.R. § 1304.60(f) – reveal that the regulation was promulgated on November 5, 1996, amended on January 15, 1998, and the entire Section 1304 carries an effective date of January 1, 1998. 45 C.F.R. § 1304.2. CCC cannot contend that ACF is exercising its authority in a manner that is inconsistent with the governing statute, and therefore its argument that ACF has violated the APA is without merit. Cf. United States v. Larionoff, 431 U.S. 864, 873 (1977) ("For regulations, in order to be valid, must be consistent with the statute under which they are promulgated."); Lincoln Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 856 F.2d 1558, 1561 (D.C. Cir. 1988) ("So long as an agency has statutory authority to issue regulations, those regulations will preempt inconsistent state statutes . . . .").

Third, CCC cannot show that it was denied due process as a result of the imposition of the 90-day period. As stated above, CCC was informed that certain of its deficiencies would need to be corrected within 90-days. During those 90-days, not once did CCC contend that it did not have sufficient time to make the requisite corrections; indeed, CCC would have the Court find that defendants are not entitled to summary judgment because such corrections were made. See Pl.'s Mem. at 20-25. For this reason, none of the cases cited by CCC support its argument on this point. For example, in Vitarelli v. Seaton, 359 U.S. 535 (1959), the Supreme Court held that an employee's dismissal from government service was illegal because the proceedings leading to his dismissal fell substantially short of the applicable departmental regulations. Id. at 545. CCC cannot show that the process leading to the termination of its funding "fell substantially short of the applicable . . . regulations." Rather, here, CCC was judged to be deficient in areas clearly identified by the applicable regulations. And, further, CCC was on notice that ACF had the authority to impose a 90-day deadline given that this explicit authority is

11

set forth in the applicable statute.  Similarly, Padula v. Webster, 822 F.2d 97 (D.C. Cir. 1987),

does not support CCC's argument.  Rather, there the Court found that an agency's internal

guidelines could not be construed as limiting the agency's "traditional hiring discretion . . . ." Id.

at 101.  Furthermore, the Court noted the settled principle that "[p]ronouncements that impose no

significant restraints on the agency's discretion are not regarded as binding norms.  As a general

rule, an agency pronouncement is transformed into a binding norm *if so intended by the agency*."

Id. at 100.  Here, there is nothing in the applicable regulation that indicates that the agency

intended to be confined to either requiring deficiencies to be immediately corrected or pursuant

to a QIP.  There is certainly no language indicating that ACF intended to be bound by regulations

that are more restrictive than the statute.  Accordingly, there is no basis upon which to conclude

that ACF lacked authority to impose the statutory 90-day timeframe. [7]

**B.    The Board Correctly Found that the Agency Considered All of the Relevant Factors in Imposing the 90-Day Period.**

Next, CCC contends that there was no finding made by ACF that the identified

deficiencies should be corrected within 90 days as opposed to being corrected in accordance with

---

[7]CCC also cites Daniels v. Williams, 474 U.S. 327, 330-32 (1986) and National Family Planning & Reproductive Health Ass'n v. Sullivan, 979 F.2d 227, 234 (D.C. Cir. 1992).  Pl.'s Mem. at 11.  Again, these cases do not support CCC's argument that ACF was prohibited from exercising its authority in a manner consistent with the applicable statute.   Daniels held that the due process clause is not implicated by a state official's negligence.  474 U.S. at 332-33.  And National Family Planning found that the rule at issue was a legislative rule and therefore the agency had to engage in notice and comment requirements of the APA.  979 F.2d at 240. However, the rule at issue there was contrary to the agency's prior interpretation of the governing statute, and therefore, the Court found that "public participation is likely to have its greatest benefit, and in turn, provide the agency with greater information from which it can make the most reasoned decision."  Id. at 242.  Here, because ACF acted consistently with its statutory grant of authority and there is no contention that ACF has acted contrary to such authority, this case provides no support for finding that ACF has violated the APA.

a QIP. The basis for this duty, according to CCC, is 42 U.S.C. section 9836a(d)(1)(B)(ii), which provides that ACF may require corrections to be made within 90 days if such time is reasonable "in light of the nature and magnitude of the deficiency." CCC contends that ACF "admits" that it made no such determination because CCC requested any documents that would show ACF had determined that 90-days was reasonable to permit CCC to correct its deficiencies and ACF responded that "[a]side from the statute itself, and the regulations, and material on the ACF website . . . we have only used opinions of the court and the DAB." Pl.'s Mem. at 14 (quoting from A.R. at 00942). However, this language does not support CCC's belief that ACF admitted that it failed to determine that 90-days was a reasonable time period to permit CCC to correct its identified deficiencies. CCC's request sought: "Any HHS guidance, memoranda, directives, or other documents describing or relating to the process or procedures for making a determination about how much time to provide a Head Start grantee to correct deficiencies under any provision of 42 U.S.C. § 9836A." This request did not specifically ask ACF to identify the basis for its decision as it regarded plaintiff.

CCC's request number eight did seek "studies, analysis or other documentation supporting the January 27, 2006 determination that the 90 day period of time provided to Plaintiff to correct its deficiencies was reasonable in light of the nature and magnitude of the deficiency." In responding to this request, ACF incorporated its answer to number 7. However, as found by the Board, this exchange does not support a finding that ACF "admitted" that it had failed to specifically determine that the 90 day period was reasonable. Rather, it is apparent from the record in this case that ACF determined, based upon all the evidence, that the 90-day correction period was reasonable.

CCC contends that ACF was required "as a matter of law to present sufficient reasons for its actions and decisions to allow a reviewing tribunal to pass on the propriety of those actions and decisions."  Pl.'s Mem. at 14 (citing Armstrong v. Executive Office of the President, 810 F. Supp. 335, 339 (D.D.C. 1993)).[8]  However, in rejecting CCC's argument, the DAB found that there was no requirement that ACF, in establishing a prima facie case of termination, "prove or even explain its basis for requiring a grantee to correct under one or another of the three time frames prescribed by section 9836a(d)(1)."  A.R. at 13-14.  However, the Board went on to conclude that because "ACF's January notice referred to the relevant statutory provision and to the review findings. . ." there was sufficient basis for the Board to conclude that "ACF did make a finding that the 90-day period was reasonable in light of the nature and magnitude of the deficiencies found."  Id. at 14.  This finding provides a basis upon which to affirm the Board's decision.  See, e.g., Shays v. Federal Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) ("In applying the 'arbitrary and capricious' standard, a court 'may not supply a reasoned basis for the agency's action that the agency itself has not given,' . . . but a court should 'uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.'") (citations omitted).  Furthermore, here the record reveals that, despite the fact that there was no requirement that the Secretary explain why the 90-day period was being imposed, the notice to plaintiff clearly indicated why certain deficiencies would be subject to the 30-day correction period and indicated

---

[8]Plaintiff's reliance on Armstrong is not readily apparent as the case involved an action by private parties under the Federal Records Act to prohibit destruction of materials on the National Security Council's computer system.  810 F. Supp. at 336.  The Court held that the defendants' record-keeping procedures and guidelines were arbitrary and capricious because, inter alia, of the lack of guidance as to which documents qualified as records that needed to be preserved.  Id. at 343.

14

that the remaining deficiencies would be subject to the 90-day correction period.  Thus, DAB's

presumption that the agency did make a finding that the 90-day period was reasonable in light of

the nature and magnitude of the deficiencies found is supported by the record in this case and

plaintiff cannot show any violation of the APA.

> **C.     CCC Had Sufficient Notice That it Had a Duty to Safely Maintain the Safety of All of Its Facilities.**

It is undisputed that the Lois I Center was deficient and posed a health to the safety of

children.  See supra, at 9-10.  In an attempt to excuse this failure, CCC contends that it did not

have sufficient notice that the hazardous conditions at the Lois I Center could be used as a basis

for finding that CCC remained deficient in its compliance with 45 C.F.R.§ 1304.53(a)(10)(viii).

This argument is without merit.

First, CCC cannot dispute that 45 C.F.R.§ 1304.53(a)(10)(viii) required it to maintain the

safety of *all* of its facilities, not just those visited by the review team on a particular day.  To date,

CCC has proffered nothing to suggest that the requirements of the Head Start program should be

excused on the basis that the review team did not specifically identify *every* facility that failed to

comply with the Head Start Act's requirements.

Second, in this case, CCC did have adequate notice that conditions at the Lois I Center

could form the basis for the termination of its funding.  Again, CCC was on notice regarding the

requirements of the Head Start Act.  Here, the review team identified two separate sites – the

Charleston and Hayes sites – that had hazardous conditions very similar to the conditions at the

later visited Lois I Center.  Specifically, the Charleston site was found to have wooden play

structures with splinters, rusty nails *and leaves* and the Hayes' site's front area was "*cluttered*

*with trash and leaves.*" A.R. at 236 (emphasis added). The conditions at the Lois I Center – *i.e.,* a wooden pile with rusty nails sticking out of it and trash and leaves in the playground and its walkway – were clearly similarly deficient. A.R. at 201-02.

Furthermore, CCC does not substantively address defendants' citation to See, e.g., Beverly Health & Rehab. Services, Inc. v. Thompson, 223 F. Supp. 2d 73, 111 (D.D.C. 2002), wherein the court held that despite the fact that termination of the plaintiff health center's funding was based on non-immediate jeopardy findings, plaintiff had received notice that termination could be based on such findings. Id. at 113. The Court held that plaintiffs had notice that failure to comply with the pertinent provisions of the Social Security Act and the requirements for long term care facilities could result in the termination of their ability to participate in the programs. Id. "Thus, any argument that plaintiffs did not get fair notice of the deficiencies– including the non-immediate jeopardy findings-lacks merit." Id. Plaintiff does not even attempt to distinguish the holding in Beverly Health & Rehab. Svcs., Inc., presumably because this case compels a similar conclusion in this case. Rather, plaintiff cites to two DAB decisions, neither of which are binding on this Court, in support of its argument that it lacked adequate notice that conditions at the Lois I Center could be the basis for the termination of its funding. Neither case is analogous to the situation here.

First, in the case of Norwalk Economic Opportunity Now, Inc., DAB Docket No. A-05-92, Decision No. 2002 (Nov. 28, 2005), the DAB granted summary disposition to the Norwalk Economic Opportunity Now, Inc. ("NEON"), finding that ACF could not terminate NEON's Head Start funding on "requirements that were different from, and not reasonably encompassed within, the deficiency cited in [an earlier] review." Id. at 3. However, the facts in this decision

16

are distinguishable because NEON, the grantee, had submitted a QIP detailing the six corrective actions that it was taking to ensure it was in compliance with the Head Start requirements, which the agency had not disputed.  Id. at 9.  Furthermore, the Board found that the requirement at issue did not "specify all of the actions a grantee must take to be in compliance."  Id.  Notably, the Board concluded that "[t]his failing might not be critical if ACF cited to other requirements putting NEON on notice that, in order to fully comply with section 1304.50(g), (and thus avoid termination), NEON needed to be performing bank account reconciliations within a particular time period and needed to be doing regular account analyses on all accounts."  Id. at 18.  Clearly, this factual circumstance is distinguishable from the present situation wherein ACF did cite to the applicable regulatory provision, 45 C.F.R.§ 1304.53(a)(10)(viii), which notified CCC that it was required it to maintain the safety of *all* of its facilities, not just those visited by the review team on a particular day.

CCC also attaches to its brief the DAB decision, First State Comm. Action Agency, Inc., DAB Docket No. A-02-122, Decision No. 1877 (May 1, 2003), without explaining how this decision supports its argument here.  Notably, the Board in First State upheld ACF's decision to terminate First State's Head Start program.  Id. at 2.  Ignoring this fact, CCC quotes a portion of the Board's ruling from First State where it stated: "[p]ast Board rulings requir[e] sufficient similarity between a finding supporting a 'repeat deficiency' and the original deficiency finding related to performance standards where the lack of such similarity might raise a legitimate notice question."  This quotation does nothing to support plaintiff's position here as there is no legitimate dispute that the conditions at the Lois I Center were similar to the sites that had been specifically identified by the ACF reviewers.  Thus, similar to the situation in Beverly Health &

17

Rehab. Services, the record in this case supports DAB's conclusion that CCC had notice that deficiencies at the Lois I site could result in termination of its funding. CCC clearly had notice as to the type of conditions that the reviewers deemed to be in violation of the performance standards. Specifically, the Charleston site had wooden play structures with splinters, rusty nails and leaves and the Hayes site's front area was "cluttered with trash and leaves[,]" and there was no indication that it was cleaned daily. A.R. at 236. Therefore, it should have come as no surprise that the Lois I center, with a wooden pile with rusty nails sticking out of it and requiring the removal of other debris, which included trash and leaves on the playground and the walkway used to access the playground, would be in violation of section 1304.53 as well. The Court should therefore reject CCC's contention that it lacked adequate notice that the deficient conditions at the Lois I Center could form the basis for the decision to terminate CCC's funding.

## CONCLUSION

For the reasons set forth above, and in defendants' motion for summary judgment, defendants are entitled to judgment as a matter of law and plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

  /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910

18

Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS


Of Counsel:

Joyce E. McCourt
Assistant Regional Counsel
Office of the General Counsel
United States Department of Health
and Human Services

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAMDEN COUNTY COUNCIL** ) | |
| **ON ECONOMIC OPPORTUNITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 07-1835 (RCL)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH & HUMAN SERVICES,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MICHAEL LEVITT, Secretary, United States** ) | |
| **Department of Health & Human Services,** ) | |
| ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**COUNTERSTATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rules 7(h) and 56.1, defendants, the United States Department of

Health and Human Services ("HHS") and Michael Levitt, through counsel, hereby submit their

response to plaintiff's, Camden Council Council on Economic Opportunity ("CCC")

"Counterstatement of Material Facts."

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.     Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.  Defendants note that the applicable cited provision, 45 C.F.R. section 1304.53(a)(10)(viii) requires a grantee to "ensure that *each* facility's space, light, ventilation, heat and other physical arrangements are consistent with the health, safety and developmental needs of children.  At a minimum, agencies *must* ensure that: (viii) Indoor and outdoor premises are cleaned daily and kept free of undesirable and hazardous materials and conditions[.]" A.R. at 201 (emphasis added).

13.    Admitted in part.  The record indicates that "6 of 16 files did not contain *either* a job description or one relevant to the present job[,]" not merely that the files were lacking *a* job description.  A.R. at 198 (emphasis added).

14.    Admitted in part.  The record demonstrates that all the children listed are listed by initials only and no full first or last names are provided.  A.R. at 710-11.

15.    Admitted in part.  Defendants note that there the second sentence of this paragraph is improper because it lacks citation to the record.  *See* LCvR 7(h) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, <u>which shall include references to the parts of the record relied on to support the statement</u>."); LCvR 56.1 (same).

2

16.     This is an improper fact as there is no citation to the record.  *See* LCvR 7(h) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, <u>which shall include references to the parts of the record relied on to support the statement</u>."); LCvR 56.1 (same).

17.     Disputed to the extent this statement purports to set forth the full reasoning of the DAB.  The Board's decision speaks for itself.

18.     Denied to the extent that CCC contends that it could not verify the files of the children lacking documentation of lead screening because only the child's initials were provided. Furthermore, whether CCC had a "system in place to follow-up with parents . . . ." is not a material fact because CCC had the responsibility to "assist parents in making the necessary arrangements to bring the child up-to-date."  45 C.F.R. § 1304.20(a)(1)(ii)(A).

19.     Agreed to the extent that there were two children who had not had the proper dental screenings.  Denied to the extent that CCC contends that HHS' Administration for Children and Families ("ACF") did not account for CCC's "efforts" to assist non-compliant parents; furthermore, the record pages cited shows that ACF merely sent a letter notifying the parents that the dental exam had not been obtained, A.R. at 747, 776.

20.     Denied to the extent that CCC contends that it could not verify the files of the children lacking documentation of lead screening because only the child's initials were provided. Admitted that to the extent that CCC concedes that not all of the children's files had evidence of the required documentation regarding a completed vision screening.

21.     Admitted to the extent that CCC concedes that not all of the files had documentation of completed hearing screenings.

22.    Denied to the extent that CCC contends that it could not verify the files of the children lacking documentation of lead screening because only the child's initials were provided. Admitted to the extent that CCC concedes that there were files missing nutritional assessments.

23.    Admitted to the extent that CCC concedes there was at least one employee that was lacking the requisite Policy Council approval at the time of ACF's review.  Furthermore, this is not a material fact because the Board did not rely on the absence of Policy Council approvals in affirming ACF's determination to terminate CCC's funding.

24.    Admitted to the extent that CCC concedes there was at least one employee that was lacking the requisite Policy Council approval at the time of ACF's review.

25.    Admitted to the extent that CCC concedes that there were employee files that did not have the requisite criminal background checks.

26.    Admitted to the extent that CCC concedes that there were at least three employee files that lacked documentation regarding CPR/First Aid training.  Furthermore, defendants contend that New Jersey law requirements are not material in this case as it deals with the *federal* Head Start program.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

  /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney

4

United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANTS

Of Counsel:

Joyce E. McCourt
Assistant Regional Counsel
Office of the General Counsel
United States Department of Health
and Human Services

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMDEN COUNTY COUNCIL ON ECONOMIC OPPORTUNITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 07-1835 (RCL)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MICHAEL LEVITT, Secretary, United States Department of Health & Human Services,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## PROPOSED ORDER DENYING PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

This matter having come before the Court on Plaintiff's Motion for Summary Judgment,

Defendants' Response in Opposition to the Motion, and Plaintiff's Reply, if any, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **DENIED**.

**SO ORDERED** on this _____ day of _____, 2008.

_____
ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE