**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMDEN COUNTY COUNCIL ) <br> ON ECONOMIC OPPORTUNITY, ) <br> 538 Broadway ) <br> Camden, NJ 08103 ) <br>                              ) <br>         Plaintiff, ) <br>                              ) <br>    v.                        ) <br>                              ) <br> UNITED STATES DEPARTMENT OF ) <br>    HEALTH AND HUMAN SERVICES, ) <br> 200 Independence Avenue, S.W. ) <br> Washington, D.C. 20201, ) <br>                              ) <br>         and                  ) <br>                              ) <br> MICHAEL LEAVITT, Secretary,  ) <br>    U.S. Department of Health and ) <br>    Human Services, ) <br> 200 Independence Avenue, S.W. ) <br> Washington, D.C. 20201, ) <br>                              ) <br>         Defendants. ) | Civil Action No.: 1:07-cv-01835-RCL |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Camden County Council on Economic Opportunity ("CCC") respectfully submits this memorandum in reply to defendants U.S. Department of Health and Human Services' and Secretary Leavitt's (collectively, "Defendants'" or "ACF's") opposition to CCC's cross-motion for summary judgment.

Defendants devote the bulk of their opposition to rehashing the same arguments they advanced in their summary judgment brief, and, to this extent, their legal position is without merit for the reasons set forth in CCC's earlier memorandum. Moreover, Defendants' efforts to

explain away the relevance of the authorities that CCC cites and otherwise to justify the decision to terminate CCC's Head Start grant are likewise unavailing. The Court should therefore grant CCC's cross-motion for summary judgment.

**ARGUMENT**

I.   *ACF Did Not Have the Authority to Impose a 90-Day Corrective Action Period in the First Instance.*

Defendants raise three arguments to shore up their proposition that they were entitled unilaterally to direct CCC to correct its "non-emergency" deficiencies within ninety days. They first suggest that it was somehow incumbent upon CCC to challenge the agency's action in this regard at the time CCC first received notice. Defendants then contend that the law does not support the notion that they are constrained to abide by their own regulations limiting the exercise of their discretion. Finally, Defendant's assert that the relevant regulation, 45 C.F.R. § 1304.60, reveals no intent on the part of the agency to be bound by the procedures described in that rule. *See* ACF Opp. at 10-12.

None of these arguments deserve serious consideration. First, there is nothing in either the Head Start Act or ACF regulations that would have required (much less allowed) CCC to voice its legal objections to Defendants' chosen course of action at any point prior to the filing of CCC's administrative appeal. Indeed, Defendants appear to raise this issue only in the hope that the Court would be swayed by demagoguery.

As to Defendants' further argument that it need not follow "regulations that are more restrictive than the governing statute," the law says otherwise. *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959); *see also Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ("[A]n agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion.").The two judicial decisions on which Defendants rely - - *United States v. Larinoff*,

2

431 U.S. 864 (1977), and *Lincoln Savings & Loan Ass'n v. Federal Home Loan Bank Bd.*, 856 F.2d 1558 (D.C. Cir. 1988) - - are of no help to Defendants. *Larinoff* merely stands for the proposition that an administrative regulation cannot be contrary to an authorizing statute, while *Lincoln Savings & Loan* states the equally obvious rule that the Supremacy Clause operates to preempt state laws inconsistent with a federal regulation. *Larinoff* has no bearing here because 45 C.F.R. § 1304.60 is not inconsistent with 42 U.S.C. § 9836a(d)(1)(B)(ii). That is, 42 U.S.C. § 9836a(d)(1)(B)(ii) *permits* Defendants to impose a ninety-day corrective action period, but does not *require* that they do so. A regulation limiting the discretion afforded by permissive language in a statute (like 45 C.F.R. § 1304.60 does) will not defeat the will of the Congress, and will therefore be valid. *Lincoln Savings & Loan Ass'n* is irrelevant simply because there is no state law involved.

    Finally, Defendants cannot reasonably maintain that they are not bound by their own rules. Defendants seize upon language in *Padula* concerning the legal effect of agency policy statements and guidance documents in an attempt apply the same reasoning in this case. *See* ACF Opp. at 12. What Defendants ignore, however, is the fact that 45 C.F.R. § 1304.60 is a duly-promulgated regulation with the force and effect of law, thus implicating the principle that "an agency issuing a legislative rule is itself bound by the rule until that rule is amended or revoked." *National Family Planning and Reproductive Health Ass'n v. Sullivan*, 979 F.2d 227, 234 (D.C. Cir. 1992). Accordingly, the text of 45 C.F.R. § 1304.60 need not contain an expression of Defendants intent to be bound. It is instead sufficient that Defendants issued 45 C.F.R. § 1304.60 as a "legislative rule" through notice-and-comment rulemaking.

II.     *Defendants Failed to Consider Relevant Factors and Acted Contrary to Law.*

Defendants make no genuine effort in their brief in opposition to address CCC's argument regarding the absence of any showing that Defendants considered whether a ninety-day corrective action period was reasonable as required by 42 U.S.C. § 9836a(d)(1)(B)(ii).  Rather, Defendants are content to rely exclusively on the decision that is the subject of this litigation as support for their position.  CCC therefore refers the Court pages 13 through 16 of its previous memorandum of points and authorities for a discussion of Defendants' failure to comply with the requirements in the Head Start Act.

III.    *Defendants Failed to Provide Adequate Notice to CCC of the Need to Address the Conditions Giving Rise to the Finding of a Continuing Deficiency under 45 C.F.R. § 1304.53(a)(10)(viii).*

Defendants assert that CCC was properly on notice of the need to address any deficient conditions at the Lois I site on an immediate basis because (1) Head Start regulations "required [CCC] to maintain the safety of *all* of its facilities," and (2) the conditions at Lois I cited in the decision to terminate were similar to those present at the other facilities referenced in the Initial Determination.  *See* ACF Opp. at 15-16.

Once again, Defendants' arguments on this score substantially mirror those presented in their initial brief, and CCC therefore refers the Court to pages 16 through 19 of its earlier memorandum for its rebuttal to those arguments.

CCC is, however, compelled to address Defendants' insistence that *Beverly Health & Rehab. Services, Inc. v. Thompson*, 223 F. Supp. 2d 73 (D.D.C. 2002), is somehow relevant to this litigation.  It is not.  The plaintiff in *Beverly Health & Rehab. Services* argued that it had not received sufficient notice that the findings of deficiencies that placed residents of its nursing facilities in "non-immediate jeopardy" could result in termination of the plaintiff's federal

4

Medicare contract. *Beverly Health & Rehab. Services,* 223 F. Supp. 2d at 112-113. This court concluded that Medicare regulations and the Medicare contract itself made clear that termination was an available remedy for any failure by the plaintiff to comply with Medicare requirements. *Id.*

Defendants' analogy is, to put it charitably, misguided. Unlike the plaintiff in *Beverly Health & Rehab. Services,* CCC does not contend that it was unaware of the potential consequences of a repeat deficiency finding in its Head Start operations. Rather, CCC asserts that the notice stating what it was required to do in order to avoid termination was insufficient because it failed to identify any necessary corrective action with respect to the Lois I site. Had CCC been properly notified, it could have acted accordingly. The plaintiff in *Beverly Health & Rehab. Services,* by contrast, could have done nothing to prevent the termination of its Medicare contract even had it received what it deemed proper notice simply because the grounds for termination existed regardless.

## CONCLUSION

For the reasons set forth both herein in its initial brief, CCC respectfully requests that the Court grant its motion for summary judgment.

Respectfully submitted,

/s/ Robert A. Graham_____
James L. Feldesman (D.C. Bar No. 023796)
Edward T. Waters (D.C. Bar No. 422461)
Robert A. Graham (D.C. Bar No. 450345)
FELDESMAN TUCKER LEIFER FIDELL LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)
jfeldesman@ftlf.com
ewaters@ftlf.com
rgraham@ftlf.com