**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAMDEN COUNTY COUNCIL** ) | |
| **ON ECONOMIC OPPORTUNITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 07-1835 (RCL)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH & HUMAN SERVICES et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the parties' cross-motions for summary judgment. The Court has considered defendants' motion [15] and plaintiff's motion [20], the opposition and reply briefs, the entire record herein, and the applicable law. For the reasons set forth below, defendants' motion [15] will be GRANTED; plaintiff's motion [20] will be DENIED.

I.   **BACKGROUND**

Plaintiff, Camden County Council on Economic Opportunity, is a not-for-profit corporation founded in 1965 and incorporated in 1966 to carry out the "Great Society" programs of the Johnson Administration. Plaintiff operates a variety of programs in furtherance of its charitable purposes, including Head Start which serves about 1,300 low-income children and their families through twenty-three sites that provide "health, educational, nutritional, and other services that are determined, based on family needs assessments, to be necessary." Head Start Act, 42 U.S.C. § 9831 (2008). Within defendant United States Department of Health and Human Services ("HHS"), the Administration for Children and Family ("ACF") administers and

1

oversees the Head Start program.

This case arises out of a review of plaintiff's Head Start program by or under the supervision of ACF. Such a review is required every three years. Except where expressly indicated, the following facts are not in dispute.

### A.      ACF's Review of Plaintiff's Head Start Program

Plaintiff is a non-profit corporation established under the laws of New Jersey and had been a Head Start grantee for the greater Camden, New Jersey area. (Am. Compl. ¶ 2.) ACF conducted a review of plaintiff's Head Start program in September 2005 using the Program Review Instrument for Systems Monitoring ("PRISM"). (*Id.* ¶ 9.) Plaintiff then received a letter from ACF dated January 27, 2006 notifying plaintiff that it was a grantee with deficiencies as defined under 45 C.F.R. § 1304.3(a)(6)(i)(A) and 45 C.F.R. § 1304.3(a)(6)(i)(c). (Admin. R. at 226); 45 C.F.R. § 1304.3 (2008). Plaintiff was found to have failed to perform substantially in the areas of Childhood Development and Health Services as well as Program Design and Management. (Admin. R. at 226.) The Head Start Program Performance Standards, codified in 45 C.F.R. § 1304, sets forth the minimum requirements of a Head Start grantee. (Defs.' Mem. in Supp. of Summ. J. at 2.) The Head Start Act states that if the ACF Secretary identifies a deficiency, the grantee may be required to correct the deficiency immediately (within thirty days), within ninety days, or pursuant to a Quality Improvement Plan (QIP). 42 U.S.C. § 9386a(d)(1)(B)(ii) (2007). In its letter, ACF noted twelve deficiencies and required that some be corrected immediately and the rest be resolved within ninety days. Plaintiff claims that ACF lacked the authority under its own regulations to require correction of deficiencies within ninety days absent a QIP. (Pl.'s Cross-mot. for Summ. J. at 9.) Plaintiff further argues that ACF failed

to follow the statutorily required procedures in doing so.  (*Id.*)  The parties dispute whether ACF had authority to impose a ninety-day corrective action period and whether it followed the proper procedures in doing so.

### B.    March 2006 Follow-Up Review

The March 2006 follow-up review focused solely on the deficiencies that ACF identified as requiring correction immediately, within thirty days.  (Admin. R. at 187.)  ACF found that plaintiff continued to be in noncompliance with 45 C.F.R. § 1304.53(a)(10)(viii) by failing to "ensure that the outdoor premises of a site were cleaned daily and kept free of undesirable and hazardous materials and conditions."  (*Id*. at 201.)  Though ACF originally identified this issue specifically with regard to two sites, Charleston Center and Hayes Center, the follow-up revealed the existence of similar problems at a third site, Lois I Center.  (*Id.*)  When ACF revisited the sites three days later, some improvements had been made, but some hazardous and unsanitary conditions remained unresolved.  (*Id.* at 202.)  Plaintiff contends that ACF failed to provide adequate notice to plaintiff of its need to address the conditions at the Lois I Center.  (Pl.'s Cross-mot. for Summ. J. at 16.)  ACF and the Departmental Appeals Board ("DAB") rejected this argument, finding that the regulation clearly sets forth the expectation that *all* outdoor premises will be cleaned daily and free from undesirable and hazardous materials and that plaintiff "had notice of the type of conditions that the survey regarded as violating the performance standard."  (Admin. R. at 15–16; Defs.' Mem. in Supp. of Summ. J. at 14.)  Whether ACF properly held plaintiff responsible for a continuing deficiency at a site not specifically mentioned in the initial January 2006 report remains a disputed issue.

### C.      May 2006 Follow-Up Review

The May 2006 follow-up review took place ninety-one days after plaintiff's receipt of the January 2006 report.  (Defs.' Mem. in Supp. of Summ. J. at 9.)  This review revealed that plaintiff remained a grantee with deficiencies.  Plaintiff failed to "ensure that all children were up-to-date on their medical and dental care within the [ninety]-day period."  (*Id.*; Admin. R. at 187, 195.)  Plaintiff had also failed to, "[i]n collaboration with each child's parent, . . . ensure that all children enrolled in the program were screened for developmental, sensory, and behavioral concerns."  (Defs.' Mem. in Supp. of Summ. J. at 9; Admin. R. at 196.)  Finally, ACF found that plaintiff had "not fully established and maintained efficient and effective record-keeping systems to provide accurate and timely information regarding children, families, and staff."  (Defs.' Mem. in Supp. of Summ. J. at 10; Admin. R. at 188, 198.)  Though the parties disagree as to how many records and files fell short of the prescribed performance standards, plaintiff concedes continuing deficiencies.  Plaintiff primarily attacks the May 2006 follow-up review on procedural grounds, asserting that defendants may only impose a ninety-day correction period if the ACF Secretary, "taking into consideration the seriousness of the deficiency and the time reasonably required to correct the deficiency[,]" determines such a course of action to be appropriate.  45 U.S.C. § 9836a(d)(1)(B)(ii) (2007).  The exact number of insufficient files and whether defendants may be afforded a presumption of reasonableness remain disputed issues.

### D.      ACF's Decision to Terminate Plaintiff's Head Start Grant Funding

A letter dated April 9, 2007 notified plaintiff of ACF's decision to terminate plaintiff's Head Start grant funding on the basis that plaintiff failed "to timely correct the findings

determined to constitute deficiencies from the PRISM Monitoring Review conducted in September 2005." (Admin. R. at 186); *See* 45 C.F.R. § 1303.14(b)(4). Plaintiff timely appealed in accordance with 45 C.F.R. § 1303.14.(f)(1), and DAB granted summary disposition in favor of ACF, affirming defendants' decision to terminate plaintiff's federal financial assistance. (Defs.' Mem. in Supp. of Summ. J. at 11; Admin. R. at 1.) Plaintiff now seeks an order from this Court granting declaratory and injunctive relief on the basis that defendants' decision to terminate plaintiff's grant was arbitrary, capricious, and/or contrary to law pursuant to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 701–706 (2008).

## II.   DISCUSSION

### A.   Legal Standards for Summary Judgment and Administrative Action Review

A Court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" suitable for trial. FED. R. CIV. P. 56(c). To ascertain whether an issue involves "material" facts, a court must look to the substantive law on which the claim or defense rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if its resolution could establish an essential element of the nonmoving party's challenged claim or defense. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Where "the nonmoving party [] fails[] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Id.* at 323. Further, the Court must accept the nonmoving party's evidence as true and must draw "all justifiable inferences" in his favor. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury

functions, not those of a judge[.]" *Id.*  Yet "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Id.* at 252.  This standard is "'very close' to the 'reasonable jury' directed verdict standard," and despite their distinct procedural postures, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or . . . is [instead] so one-sided that one party must prevail as a matter of law." *Id.* at 250–51.

Under the APA, the Court is to set aside an agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2) (2008).  The standard of review is highly deferential to the agency, so that a Court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the Court] would have reached had the question arisen in the first instance in judicial proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Paper Serv. Corp.*, 461 U.S. 402, 422 (1983).  The Court is not entitled to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Moreover, judicial review is confined to the full administrative record before the agency at the time the decision was made. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).  When reviewing that record, the Court considers "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Jifry v. FAA*, 370 F.3d 1174, 1180 (D.C. Cir. 2004).

6

B.    **Application of Legal Standards**

1.    **Plaintiff's Argument that ACF Did Not Have Authority to Impose a
       Ninety-Day Corrective Action Period**

Plaintiff argues that ACF acted without authority in requiring plaintiff to correct its

deficiencies within ninety days absent a QIP.  (Pl.'s Cross-mot. for Summ. J. at 9.)  Plaintiff

bases this claim on the plain language of 45 C.F.R. § 1304.60(b), which states that defendants

may require a grantee to correct any deficiencies "*either* immediately *or* pursuant to a Quality

Improvement Plan."  45 C.F.R. § 1304.60(b) (2008) (emphasis added).  In plaintiff's view, this

regulation acts as a self-imposed constraint on defendants' discretionary authority under the

Head Start Act, which provides that a grantee may be required:

> (i) to correct the deficiency immediately, if the Secretary finds that the deficiency
> threatens the health or safety of staff or program participants or poses a threat to the
> integrity of Federal funds; (ii) to correct the deficiency not later than ninety days
> after the identification of the deficiency if the Secretary finds, in the discretion of the
> Secretary, that such a ninety-day period is reasonable, in light of the nature and
> magnitude of the deficiency; *or* (iii) in the discretion of the Secretary (taking into
> consideration the seriousness of the deficiency and the time reasonably required to
> correct the deficiency), to [develop] a quality improvement plan[.]

42 U.S.C. § 9836a(d)(1)(B)(ii) (2007) (emphasis added).

Defendants counter that the regulation's section 1304 carries an effective date of January

1, 1998; only thereafter, on October 27, 1998, was the ninety-day corrective action period added

to the Head Start Act as an option.  (Defs.' Mem. in Supp. of Summ. J. at 29.)  Because Congress

is presumed to be familiar with existing relevant law when it enacts legislation and because

regulations must conform to the requirements set forth in the statute under which they are

promulgated, defendants contend that the regulation was implicitly superceded by the statutory

provision's amendment.  *See, e.g., Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85

(1998); *United States v. Larionoff*, 431 U.S. 864, 873 (1977).  This Court is satisfied that

defendants acted properly under their statutory authority to impose a ninety-day correction

period and agrees with DAB that "[t]here was no indication that the regulation was intended to

limit the options made available by the statute."  (Admin. R. at 8.)  The evidence does not

present sufficient disagreement to require submission to a jury, and therefore no genuine issue

exists with regard to defendants' authority to impose a ninety-day corrective action period.

*Anderson*, 477 U.S. at 250–51; *Celotex*, 477 U.S. at 322.

> **2.      Plaintiff's Argument that ACF Failed to Consider the Relevant**
>
> **Factors in Deciding to Impose the Ninety-Day Period**

Plaintiff argues that even if ACF had authority to impose a ninety-day corrective action

period, it did not follow the proper procedural process in doing so.  (Pl.'s Cross-mot. for Summ.

J. at 13.)  42 U.S.C. § 9836a(d)(1)(B)(ii) affords defendants the option to impose a ninety-day

correction period if the ACF Secretary determines that this time frame "is reasonable, in light of

the nature and magnitude of the deficiency." 42 U.S.C. § 9836a(d)(1)(B)(ii) (2007).  Plaintiff

asserts that "[w]hen a statute requires agencies to 'consider' particular factors, it imposes upon

agencies duties that are 'essentially procedural' . . . . [T]he only role for a court is to ensure that

the agency has considered the [factors]."  (Pl.'s Cross-mot. for Summ. J. at 14) (quoting Getty v.

Fed. Sav. & Loan Ins. Corp., 805 F.2d 1050, 1055 (D.C. Cir. 1986)).  Plaintiff argues that

without concrete evidence of a reasonableness determination by defendants, the Court may not

fully and fairly determine whether ACF's decision to impose the ninety-day corrective action period was arbitrary and capricious. (Pl.'s Cross-mot. for Summ. J. at 14–15); 5 U.S.C. § 701 (2008).

DAB found that defendants were under no obligation to prove or explain their bases for deciding to impose a particular time frame and that reasonableness may be presumed from ACF's reference in the January 2006 notice to relevant statutory provisions and specific review findings. (Defs.' Mem. in Supp. of Summ. J. at 14.) Because the standard set forth in 42 U.S.C. § 9836a(d)(1)(B)(ii) is one of reasonableness rather than a multi-factor analysis, this Court is persuaded that DAB properly presumed defendants' finding that a ninety-day time period was reasonable "in light of the nature and magnitude of the deficiencies." (*Id.*; Admin. R. at 14.) The violation identified by defendants as requiring immediate correction involved the inspection and cleaning of an outdoor playground, whereas those violations afforded a ninety-day corrective action period involved updating and supplementing files and contacting parents to make the necessary arrangements. (Defs.' Mem. in Supp. of Summ. J. at 4–6.) Ensuring that client files are kept up-to-date is an inherently time-consuming project but is absolutely necessary to the program's successful operation and therefore required prompt and expeditious attention. Correction of incomplete files could not be justifiably deferred by requiring a QIP. Further, plaintiff made no effort to contest the ninety-day period until it had expired and plaintiff's funding was revoked. Seeking another bite at the apple when these deficiencies affect the safety and health of low-income families and their children is unacceptable and shall not be rewarded. The Court finds that defendants used proper discretion in imposing the ninety-day corrective action period and that its decision was not arbitrary, capricious, or otherwise contrary

to law.  5 U.S.C. § 706(2) (2008).  The evidence does not present sufficient disagreement to require submission to a jury, and therefore no genuine issue exists with regard to defendants' determination of reasonableness.  *Anderson*, 477 U.S. at 250–51; *Celotex*, 477 U.S. at 322.

### 3.   Plaintiff's Argument that ACF Failed to Provide Adequate Notice of Plaintiff's Need to Address the Conditions at Lois I Center

Plaintiff argues that defendants improperly relied on conditions at the Lois I Center as a basis for terminating plaintiff's funding by providing insufficient notice to plaintiff that defendants would consider conditions at *all* of plaintiff's playgrounds, not only the sites specifically mentioned in the initial January 2006 report.  (Defs.' Mem. in Supp. of Summ. J. at 14; Pl.'s Cross-mot. for Summ. J. at 16.)  The Head Start Act requires that defendants show similarity between an initial determination of deficiency and a final determination in order to properly support a decision to terminate funding, and plaintiff asserts that defendants failed to meet this standard.  (Pl.'s Cross-mot. for Summ. J. at 16); *See* 42 U.S.C. § 9836a(d)(1)(A) (2008).  Defendants counter that no "legitimate notice question" exists since "CCC had notice of the type of conditions that the surveyors regarded as violating the performance standard." (Admin. R. at 16); *See First State Cmty. Action Agency, Inc.*, DAB No. 1877 (May 1, 2003). Like at Charleston Center, Lois I Center had a "wooden pile with rusty nails sticking out of it and . . . other debris, which included trash and leaves on the playground," clearly posing a threat to the health and safety of children.  (Defs.' Mem. in Supp. of Summ. J. at 26.)  This Court is satisfied that defendants provided sufficient notice to plaintiff with regard to the 45 C.F.R. § 1304.53(a)(10)(viii) deficiency and agrees with DAB that the review process "is not intended to be an opportunity to play cat and mouse with ACF by correcting one premise while allowing

other premises to be or become noncompliant or by correcting one set of hazards while allowing

similar hazards to exist." (Admin. R. at 16.) The evidence does not present sufficient

disagreement to require submission to a jury, and therefore no genuine issue exists with regard to

plaintiff's claim of insufficient notice. *Anderson*, 477 U.S. at 250–51; *Celotex*, 477 U.S. at 322.

4.    **Plaintiff's Argument that ACF Reported Inaccurate Information,**

**Thereby Precluding Summary Judgment in Favor of Defendants**

Plaintiff disputes ACF's findings in the May 2006 follow-up review with regard to the

exact number of files affected by each category of missing information, concluding that these

disparities invalidate defendants' termination decision. (Pl.'s Cross-mot. for Summ. J. at 20–24.)

Plaintiff also alleges that some files only remain incomplete because "the parents . . . either

failed to submit requested documentation or failed to make/attend [an appointment]." (*Id.* at 20.)

However, the statutory regulation plainly states that plaintiff "must *assist* parents in making the

necessary arrangements to bring the [children's files] up-to-date," not rely solely on the parents'

initiative. 45 C.F.R. § 1304.20(a)(1)(ii)(A) (2008) (emphasis added). Further, whether plaintiff

is missing documentation of six as opposed to seven lead screenings, or eleven rather than

twelve vision screenings is irrelevant since plaintiff does not dispute any one of defendants'

findings in its entirety. (Pl.'s Cross-mot. for Summ. J. at 20–24.) Plaintiff remained a grantee

with deficiencies despite having ninety days to bring its files and premises up to the minimum

statutorily required standards. Defendants properly terminated plaintiff's federal financial

assistance because plaintiff "failed to timely correct one or more deficiencies as defined by 45

C.F.R. § 1304[.]" *See* 45 C.F.R. § 1303.14(b)(4) (2008). The evidence does not present

sufficient disagreement to require submission to a jury, and therefore no genuine issue exists

with regard to the true number of nonconforming files and outdoor premises. *Anderson*, 477

U.S. at 250–51; *Celotex*, 477 U.S. at 322.

III.    **CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Summary Judgment will be DENIED,

and defendants' Motion for Summary Judgment will be GRANTED.

A separate order shall issue this date.


Signed by Chief Judge Royce C. Lamberth on July 7, 2008.